**LURIA CONSTRUCTION CORPORATION OF GEORGIA, Appellant,**

v.

**UNION ELECTRIC COMPANY, Inc., Appellee.**

**No. 18909.**

United States Court of Appeals Fifth Circuit.

Jan. 2, 1962.

Beall & Caro, Philip D. Beall, Forsyth Caro, Pensacola, Fla., for appellant.

William Fisher, Jr., Fisher & Hepner, Pensacola, Fla., for appellee.

Before BROWN, GEWIN and BELL, Circuit Judges.

PER CURIAM.

This controversy grows out of a contract covering certain electric work done by Union, the subcontractor, for Luria, the prime contractor, in connection with the construction of air force maintenance docks at Eglin Air Force Base, Florida. There is no distinctive matter of law presented and no significant difference between the parties on the applicable controlling principles of law. What there is, and all there is, is a substantial difference over facts. These facts are of a kind which can scarcely be repeated so no purpose will be served in an elaboration of them or in a restatement of the unchallenged legal propositions.

The Subcontractor's suit, essentially successful below, had a dual aim. First, on the basis that a specific inclusion of the disputed work was a mistake, the formal written contract had to be modified to exclude that work. Second, this work having been performed by the Sub-

contractor at the specific request of the Contractor after the alleged mistake was discovered and its existence was known to both, the Subcontractor was entitled to recover for it on a quantum meruit basis.

The written contract obligated the Subcontractor "to furnish, * * * and install all items for a complete hangar electrical system in accordance with [the drawings] M-1-E, M-2-E * * * M-6 and M-7-E * * *."

The matter in dispute is the work covered by plans M-1-E. The Court, after an extended trial in which all witnesses were interrogated at great length, found that this was mistakenly included in the contract. There was ample basis for that conclusion as even a brief resume makes plain. In answer to the Contractor's solicitation for proposed bids, the Subcontractor on October 27, 1958 made a quotation for the work, describing it as shown by plans M-7-E. The Contractor's planning engineer immediately discussed the matter with Subcontractor's estimator. The Court credited the latter's testimony that he was told that reference to M-7-E was in error and it should have been M-1-E. Thereafter a further proposal was sent in on December 11, 1958. But where in the October 27 letter it was M-7-E that was mentioned and M-1-E was not, the December letter specified M-1-E but not M-7-E. This precipitated another call from the Contractor in which the confusion was again discussed. And while each considered that the matter was ironed out, it is evident that each was laboring under a misapprehension of the other's position. Subsequently the Contractor prepared the formal contract covering, as mentioned above, all of the specified plans.

Back of all of the confusion was the fact, credited by the trial Judge, that during all of this time the Subcontractor did not have a copy of plans M-1-E. This plan was, of course, attached to the formal contract (which was not effectually delivered until two months after the work had started under it), but it had not been the basis for any computations by the Subcontractor. This undisputed fact of considerable significance is in turn borne out by the contemporary preparation of "take off" sheets for the work covered by each of the other specified plans prior to the time the proposals of October and December were made. In contrast, no "take off" sheets were ever prepared by the Subcontractor for the work called for on M-1-E until long after the general work had physically commenced under the contract. And then it was done when the Subcontractor discovered that the formal contract specified work covered by plans M-1-E. This is corroborated further by the undisputed fact that the work on M-1-E was 50 to 70% of the entire subcontract, and the contract price specified in the formal contract was substantially below other competing bids. Indeed, the formal contract price was $31,252.77 ostensibly covering all of the plans specified above whereas the Court found (and awarded judgment accordingly) that the reasonable value of the work, as shown on the subsequent "take off" for M-1-E was $23,831.16.

The trial Court viewed it essentially as a question whether there had been an adequate consensual meeting of the minds on the actual work to be covered. Because of the confusion, uncertainty and misunderstanding, briefly described, the Court held in the negative. The Contractor does not expressly attack that finding. The Contractor's single contention before us is the restricted one that "it was error for the Court to adjudge that Appellee [subcontractor] was not under a duty to learn the contents of the written contract before it signed it, and that Appellee [Subcontractor] without so reading did not sign the same at its peril and is not estopped to deny its obligation and was not conclusively presumed to know the contents of the contract and must not suffer the consequences of its own neglect." But in the face of the fact finding made which is not expressly attacked as such, and which under any event would withstand the scrutiny of F.R.Civ.P. 52(a),

28 U.S.C.A., this single contention affords no basis for a reversal.

Affirmed.